UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cv-00687-MOC-DCK

| | | |
|---|---|---|
| **GRAYSON O COMPANY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **ORDER** |
| | ) | |
| **AGADIR INTERNATIONAL LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on Plaintiff Grayson O Company's Motion for

Partial Summary Judgment (#45) and Defendant Agadir International, LLC's Motion for

Summary Judgment (#51), which have now been fully briefed and are ripe for review. The court

heard oral arguments on these motions on September 16, 2015. Having considered the matter,

the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I.   Introduction

The parties in this case are competitors in the hair care product industry; both parties sell,

inter alia, shampoos, conditioners, hair protectants, and smoothing and straightening lotions.

Plaintiff ("Grayson O") owns a federal trademark registration for the mark "F 450" for use in

connection with hair care products. By their complaint, Plaintiff asserts that Defendant

("Agadir") is infringing on that mark by including the temperature "450°" as part of the name of

Defendant's product line. Grayson O has filed a complaint asserting the following causes of

action: 1) Federal Trademark Infringement and Unfair Competition under sections 43(a) and

32(a) of the Lanham Act (15 U.S.C. §§ 1125(a), 1114); 2) Unfair and Deceptive Trade Practices under North Carolina law (N.C. Gen. Stat. § 75-1.1); 3) common law trademark infringement under North Carolina law; and 4) common law unfair competition under North Carolina law. By its motion for partial summary judgment, Plaintiff seeks an order entering judgment against Defendant on the issue of its liability for trademark infringement and unfair competition and enjoining Agadir's unlawful conduct. Defendants have also moved for summary judgment.

By way of background, the parties have informed the court that within the past several years, companies in the hair care industry have developed hair appliances, such as blow dryers and straightening flat irons, that can apply heat to hair at temperatures up to 450°F (an increase in the previous maximum temperature) to achieve better results in straightening hair. See, e.g., Statement of Paul Bogosian (#51-4) at ¶ 3; Deposition of Van Stamey (#39) at 123:11-22. Such temperature is also the maximum temperature hair can withstand without risking permanent damage and/or melting. See Pl. Admissions (#51-3 at ¶ 1). As a result of this new increased maximum temperature in hair appliances, several companies in the hair care industry, including Plaintiff and Defendant, began manufacturing products designed to protect hair from this increased temperature and to assist in straightening and smoothing hair. See, e.g., (#51-3) (showing advertisements and product descriptions for hair care products and tools referring to 450°). Plaintiff created a line of products called "F450°" and Agadir created a line of products called "Agadir Argan Oil Hair Shield 450° Plus." Defendant states that other brands created similar products and that "450" is currently a popular number and term in widespread use among hair care product manufacturers. See, e.g., (#51-3) (showing hair care products and tools using "450").

## II.    Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party.  That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255.  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  In the end, the

question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252.

## III. Analysis

Section 32(1) of the Lanham Act provides a cause of action and remedy for the infringement of a federally registered trademark,[1] and section 43(a) of the Lanham Act provides a cause of action and remedy for unfair competition and unfair business practices involving trademark infringement.[2] "Trademark infringement may be considered a cause of action arising under the more general tort of unfair competition as the essence of both claims is that infringement could cause confusion among consumers or the public." Tassel Ridge Winery, LLC v. Woodmill Winery, Inc., No. 5:11-CV-00066-RLV, 2013 WL 5567505, at *2 (W.D.N.C. Oct. 9, 2013). The parties are in agreement that the court's analysis of trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under North Carolina law, as they all focus on the likelihood of confusion as to the

---

1 Section 32(a) of the Lanham Act provides:

> Any person who shall, without the consent of the registrant—
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive… shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114 (1).

2 Section 43(a) of the Lanham Act provides:

> [a]ny person who, on or in connection with any goods ... or any container for goods, uses in commerce any word, term, name, symbol ... or any false designation of origin, ... which is likely to cause confusion, or to cause mistake, ... or in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

source of the goods involved. <u>See</u> <u>Georgia Pac. Consumer Products, LP v. Von Drehle Corp.</u>, 618 F.3d 441, 449 (4th Cir. 2010). Similarly, the parties agree that the analysis of whether Defendant violated the North Carolina Unfair and Deceptive Trade Practices Act is the same as whether Defendant violated the Lanham Act. <u>See</u> <u>Djarum v. Dhanraj Imports, Inc.</u>, 876 F. Supp. 2d 664, 668 (W.D.N.C. 2012); <u>Universal Furniture Int'l, Inc. v. Collezione Europe USA, Inc.</u>, No. 1:04CV00977, 2007 WL 2712926, at *15 (M.D.N.C. Sept. 14, 2007) <u>aff'd sub nom.</u> <u>Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.</u>, 618 F.3d 417 (4th Cir. 2010), <u>as</u> <u>amended</u> (Aug. 24, 2010); <u>Polo Fashions, Inc. v. Craftex, Inc.</u>, 816 F.2d 145, 148 (4th Cir. 1987). Thus, the court will analyze the claims together.

In order to prevail on claims of trademark infringement and unfair competition under the Lanham Act, a plaintiff is obliged to show: 1) that it owns a valid, protectable trademark, and 2) that Defendant used an identical or similar mark that is likely to cause confusion among consumers. <u>Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.</u>, 43 F.3d 922, 930 (4th Cir. 1995). Thus, "the ultimate question, for purposes of determining liability in trademark infringement actions, is whether there exists a likelihood that an appreciable number of ordinarily prudent purchasers will be misled, or indeed simply confused, as to the source of the goods in question." <u>Perini Corp. v. Perini Const., Inc.</u>, 915 F.2d 121, 127 (4th Cir. 1990). The Fourth Circuit has noted that "[s]ummary judgment may be granted in a trademark dispute when the material, undisputed facts disclose a likelihood of confusion." <u>Synergistic Int'l, LLC v.</u> <u>Korman</u>, 470 F.3d 162, 170 (4th Cir. 2006) (citing <u>Lone Star Steakhouse</u>, 43 F.3d at 935).

On the first prong, Plaintiff contends that the mark is valid and enforceable because the mark is registered and therefore entitled to a presumption of validity. <u>See</u> <u>Pizzeria Uno Corp. v.</u>

Temple, 747 F.2d 1522, 1529 (4th Cir. 1984) (holding that when the USPTO registers a mark without requiring proof of secondary meaning, the agency has concluded that the mark is suggestive, and courts must consider the USPTO's determination to be prima facie correct, thereby shifting the burden of proving contrary to defendant). Here, Defendant has assumed for the purposes of its summary judgment motion that Plaintiff's mark is valid and enforceable. See Def. Mem. (#51) at p. 9.

On the second prong, the Fourth Circuit has identified nine factors generally relevant to the "likelihood of confusion" inquiry:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 153 (4th Cir. 2012) (citing George & Co., LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009)). "These factors are not always weighted equally, and not all factors are relevant in every case." Id. (internal quotation marks omitted). Rather, "the confusion factors are only a guide—a catalog of various considerations that may be relevant in determining the ultimate statutory question of likelihood of confusion," and "there is no hard and fast rule that obligates the district court to discuss each non-mandatory factor." Id. at 154 (internal citations and quotation marks omitted). Additionally, "[i]n conducting the likelihood-of-confusion analysis, a court does not indulge in a prolonged and minute comparison of the conflicting marks in the peace and quiet of judicial chambers, for this is not the context in which purchasers are faced with the marks. Rather, we look to how the two parties actually use their marks in the marketplace to determine whether the defendant's use is

likely to cause confusion." <u>CareFirst of Maryland, Inc. v. First Care, P.C.</u>, 434 F.3d 263, 267 (4th Cir. 2006) (internal citations and quotation marks omitted). The court will address each factor in turn.

## A. *Likelihood of Confusion Factors*

### 1. **Strength or distinctiveness of the plaintiff's mark as actually used in the marketplace**

"The strength of a mark is the degree to which a consumer in the relevant population, upon encountering the mark, would associate the mark with a unique source." <u>CareFirst</u>, 434 F.3d at 269. Strength is evaluated both in terms of conceptual and commercial strength. <u>Id.</u> A mark's conceptual strength "focuses on the linguistic or graphical 'peculiarity' of the mark, considered in relation to the product, service, or collective organization to which the mark attaches." <u>Id.</u> (internal citation and quotation marks omitted). Commercial strength considers "the marketplace and asks 'if in fact a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise.'" <u>Id.</u> (quoting <u>Perini Corp. v. Perini Constr., Inc.</u>, 915 F.2d 121, 125 (4th Cir.1990)).

#### a. *Conceptual Strength*

The Fourth Circuit noted in <u>Carefirst</u>, "the frequency of prior use of [a mark's text] in other marks, particularly in the same field of merchandise or service, illustrates the mark's lack of conceptual strength….A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties." <u>Id.</u> at 271 (internal citations and quotation marks omitted) (alterations in original). A mark's conceptual strength is determined in part by its placement into one of four categories of distinctiveness: 1) generic, 2) descriptive, 3) suggestive, and 4) arbitrary or fanciful. <u>Renaissance</u>

Greeting Cards, Inc. v. Dollar Tree Stores, Inc., 227 F. App'x 239, 242 (4th Cir. 2007) (citing

Pizzeria Uno, 747 F.2d at 1527). Here, the parties debate whether the mark is descriptive or

suggestive, which the Fourth Circuit has noted is a difficult distinction to draw. Pizzeria Uno,

747 F.2d at 1528; Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 171 (4th Cir. 2006). However,

the Circuit has offered the following guidance as to the distinction:

> [A] word or figure is descriptive if it identifies a characteristic or quality of an
> article or service, and a suggestive term is one which suggests rather than describes,
> some characteristic of the goods to which it is applied and requires the consumer to
> exercise his imagination to reach a conclusion as to the nature of these goods.

Synergistic, 470 F.3d at 171 (quoting Pizzeria Uno, 747 F.2d at 1528) (internal quotation marks

omitted). Generally, "[s]uggestive and arbitrary marks are deemed strong and presumptively

valid, whereas generic and descriptive marks are deemed weak, and require proof of secondary

meaning within the market in order to receive trademark protection." Renaissance Greeting

Cards, 227 F. App'x at 242. However, a finding that a mark is suggestive rather than descriptive

"does not resolve the mark's conceptual strength. Instead, the court must also consider the use of

the mark by third parties." Fuel Clothing Co. v. Nike, Inc., 7 F. Supp. 3d 594, 611 (D.S.C. 2014).

Plaintiff contends that its mark is conceptually strong because the dominant portion of its

trademark—450—is not descriptive. Plaintiff argues that while some hair care products have

heat settings of 450º, the raw number 450 without any other indicia or phrasing does not convey

anything. Plaintiff also contends that the fact that the USTPO found the term to be registrable

indicates that it found the term to be at least suggestive, if not arbitrary. See George & Co. LLC

v. Imagination Entm't Ltd., 575 F.3d 383, 395 (4th Cir. 2009) ("We are obligated to defer to the

determination of the USPTO, which constitutes prima facie evidence of whether a mark is

descriptive or suggestive. ... If the USPTO believes a mark is descriptive, the registrant must

provide evidence of secondary meaning before the USPTO will grant registration. ... Here, the parties agree that the LCR mark was registered by the USPTO without any proof of secondary meaning, and that the USPTO determined that the LCR mark was suggestive.") (internal citations omitted).

Defendants argue that even if the mark is suggestive, the frequency of prior use in the same field indicates lack of conceptual strength, noting several other federal trademark applications and registrations for products and tools associated with hair care include "450." See (##67-72) (five of which are actually registered). Defendants also notes that "450" is widely used in the hair care industry and in other industries, and have introduced evidence of at least twenty other hair care products and tools that include the term "450." See, e.g., (#51-3). Plaintiff counters that all of the third-party hair product marks have other words added to the term "450" and that "450" is rarely the dominant word on display. See id.

The court finds that "F450" is suggestive (and therefore presumptively valid) because it suggests, rather than describes, a characteristic of the goods to which it applies. Similarly, there has been no evidence introduced to suggest that the USPTO required Plaintiff to provide proof of any secondary meaning before registering the trademark, which the court takes as prima facie evidence of the mark being suggestive. See George, 575 F.3d at 395. However, the court finds that the mark is somewhat weakened by the frequent third-party use of "450" in similar hair-care products. See Fuel Clothing Co. v. Nike, Inc., 7 F. Supp. 3d 594, 612 (D.S.C. 2014) ("while the court acknowledges that the mark is at least suggestive and therefore inherently distinctive, the court finds that the mark's conceptual strength is slightly weakened by frequent third-party use of the mark.").

### b.  *Commercial Strength*

Assessing a mark's commercial strength mirrors the inquiry of whether the mark has secondary meaning, which involves consideration of several factors, including, but not limited to: 1) advertising expenditures; 2) consumer studies linking the mark to a source; 3) sales success; 4) unsolicited media coverage of the product; 5) attempts to plagiarize the mark; and 6) the length and exclusivity of the mark's use. Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc., 405 F. Supp. 2d 680, 693 (E.D. Va. 2005) aff'd, 227 F. App'x 239 (4th Cir. 2007) (citing Perini Corp. 915 F.2d at 125). In weighing these factors, the court finds that Plaintiff's mark is not commercially strong for the following reasons.

As for advertising expenditures, Plaintiff states that it has spent nearly $200,000 on advertising from 2011 to present, see (#46-4), which the court finds minimal relevant to the overall hair care industry. See, e.g., id. at 694 (finding that Plaintiff's attempts to promote its mark through advertising with an average of $360,000 per year weighed in favor of finding a commercially weak mark). As to the second factor, Plaintiff has offered no evidence of any consumer studies linking the F 450 mark or the "450" term to Grayson O. See Stamey Dep. at 157:13-158:10; George & Co. LLC v. Imagination Entm't Ltd., 575 F.3d 383, 396 (4th Cir. 2009) ("The absence of … evidence [of consumer studies] is telling, as such evidence is 'generally thought to be the most direct and persuasive way of establishing secondary meaning.'" (quoting U.S. Search, LLC v. U.S. Search.com Inc., 300 F.3d 517, 526 n. 13 (4th Cir. 2002)). As to sales success, Plaintiff states that in the 4.5 years since it first introduced the product, it has sold and distributed nearly 60,000 units of hair care products prominently bearing its registered trademark internationally and in at least 30 states. See (#46-2) (Grayson O's Sales Figures). It

also states that those sales account for nearly $600,000 dollars in gross revenue attributable exclusively to the products bearing that mark. The court finds that these sales are minimal in comparison to the multi-billion dollar hair care industry. <u>See</u> Stamey Dep. (#39) at 47:24–50:14 (explaining that sales of F 450 products account for at most $1.5 million); <u>Renaissance Greeting Cards</u>, 405 F. Supp. 2d at 693-94 ("RGC's sales average of roughly $12 million per year is minuscule in relation to the size of the overall greeting card industry of $7 billion per year."). As to the fourth factor, Plaintiff has not received any unsolicited media coverage of its F 450 product line. <u>See</u> Stamey Dep. (#39) at 160:19-161:25. As to the fifth factor, there is no indication in the record that there have been any attempts to plagiarize the mark (aside from the allegations contained within this action). Finally, as to the sixth factor, Plaintiff has only been using the "F 450" mark for four years, which the court finds to be a relatively short time period. The court thus finds that under current Fourth Circuit precedent, the mark at issue is commercially weak. <u>See</u> <u>George & Co. LLC v. Imagination Entm't Ltd.</u>, 575 F.3d 383, 395-96 (4th Cir. 2009) (finding a mark commercially weak where its advertising expenditures were minimal, no consumer studies were performed, and there was no known attempt to plagiarize the mark, but where Plaintiff had enjoyed some unsolicited media attention, used the mark for over twenty years, and enjoyed recent sales success).

   In light of its conclusion that the mark is commercially weak, the court finds that even though the mark is suggestive, the first factor regarding the strength or distinctiveness of the mark as actually used in the marketplace does not weigh in favor of Plaintiff in the likelihood of confusion analysis. <u>See</u> <u>id.</u> (finding that lack of commercial strength rendered the mark weak for purposes of "strength of the mark" analysis); <u>Petro Stopping Centers, L.P. v. James River</u>

Petroleum, Inc., 130 F.3d 88, 93 (4th Cir. 1997) ("Even a mark held to be suggestive may be found weak under the first likelihood of confusion factor."); Fuel Clothing Co. v. Nike, Inc., 7 F. Supp. 3d 594, 615 (D.S.C. 2014) ("while Fuel's mark has some conceptual strength, its commercial weakness in combination with the widespread third-party use of the mark necessitates a finding that a consumer would not associate the 'Fuel' mark specifically with Fuel.").

## 2. Similarity of the two marks to consumers

In assessing the similarity of the marks, the court focuses on the "dominant portions of the parties' marks….[and] whether there exists a similarity in sight, sound, and meaning which would result in confusion." George & Co., 575 F.3d at 396 (internal citations and quotation marks omitted). Courts examine the "allegedly infringing use in the context in which it is seen by the ordinary consumer." Anheuser–Busch, Inc. v. L & L Wings, Inc., 962 F.2d 316, 319 (4th Cir. 1992). "An informed analysis of whether the likelihood of confusion exists cannot rest solely upon a 'side-by-side' comparison of the marks without regard to the marketplace in which they are used." What-A-Burger Of Virginia, Inc. v. Whataburger, Inc. Of Corpus Christi, Texas, 357 F.3d 441, 450 (4th Cir. 2004) (citing Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1115 (7th Cir. 1997)). The Fourth Circuit has noted that "[i]f one of two similar marks is commonly paired with other material, that pairing will serve to lessen any confusion that might otherwise be caused by the textual similarity between the two marks." CareFirst of Maryland, Inc. v. First Care, P.C., 434 F.3d 263, 271 (4th Cir. 2006). This effect is "most significant…when the allegedly infringed mark…has little independent strength." Id.

Here, Plaintiff claims that its registered mark and Defendant's allegedly infringing mark are

identical. Plaintiff claims that the dominant portion of both marks is "450," and that they are therefore identical in sight and sound. Defendant argues that the marks are not similar because even though its mark uses "450º," the entire mark is "Agadir Argan Oil Hair Shield 450º Plus." As shown in the photos below, Defendant's mark on its packaging puts the words "Hair Shield 450º" in the same size, font, and color, and that phrase is larger than "Agadir Argan Oil."[3] Plaintiff's product displays "F450" in the center of the bottle in a script font within a white circle. Thus, while the dominant mark on Plaintiff's products is clearly "F450," and both Plaintiff's and Defendant's products use "450," it does not appear to the court that "450" is any more dominant than "Hair Shield" in Defendant's products. Given that Defendant commonly uses other words in conjunction with "450," the court finds that such pairing lessens any confusion that might otherwise exist because of the textual similarities.[4]

 

---

[3] The court notes that at the hearing, Plaintiff showed the court a picture of an Agadir Argan Oil 450 Plus "spray treatment" product recently produced in discovery. The packaging in that bottle includes text wherein "450" is in much larger font than the rest of the label. Additionally, the "450" is written in white font on a red background, which is similar to Plaintiff's packaging and labels. However, Plaintiff conceded at the hearing that this product was not available for purchase by consumers, but was only displayed at trade shows. As the focus of the court's inquiry is on "the context in which [the mark] is seen by the ordinary consumer," Anheuser–Busch, Inc. v. L & L Wings, Inc., 962 F.2d 316, 319 (4th Cir. 1992), the court does not consider this bottle in making its determination of whether the marks are used similarly.

[4] The court also notes that at the hearing, Plaintiff showed the court recently-produced documents wherein Defendant internally refers to the product as "450" in correspondence. However, as noted above, the focus of the court's inquiry is how the marks appear to consumers, not internally to employees.

The court also finds that the parties' use of their marks in their presentation and packaging does not cause any likelihood of confusion. While the products are generally packaged in bottles, those bottles have different shapes, designs, caps, and colors. The "Agadir Argan Oil Hair Shield 450° Plus" products are packaged in a red/orange bottle with a yellow/orange label that prominently displays the "Agadir Argan Oil Hair Shield 450° Plus" in a block font type. Plaintiff's product, by contrast, is packaged in a pink/red bottle with "F450" appearing in the center of the bottle in a script font within a white circle. Additionally, each product displays a distinct brand name—Plaintiff's bottles say "Thermafuse" (one of its brands) at the bottom, and Defendant's bottles all have Agadir's name on them. The court therefore finds that although this factor presents a close call, the parties' marks are not so similar as to create a likelihood of consumer confusion.

### 3. Similarity of the goods that the marks identify

There is little doubt that the goods sold by the parties are very similar—both parties sell hair care products including hair spray and crème. The parties agree as much. The court therefore finds that this factor weighs in favor of Plaintiff. See Sara Lee Corp. v. Kayser Roth Corp., 81 F.3d 455, 465-66 (4th Cir. 1996) (finding similarity where both goods are associated in the women's hosiery market and finding that the lack of difference did nothing to avoid confusion); George & Co. LLC v. Imagination Entm't Ltd., 575 F.3d 383, 397 (4th Cir. 2009) ("district court concluded that the parties' goods were nearly identical and, therefore, the similarity factor weighed in favor of [Plaintiff]").

### 4. Similarity of the facilities used by the markholders

The parties' channels of trade are the same—both parties' goods are sold directly to

-14-

consumers in salons, as opposed to in larger retail chains. <u>See</u> (# 37) at p. 5, 7, 8 (reverse of

Agadir's labels stating the product is "[s]old exclusively by professional salons."); Stamey Decl.,

(#46-1) at ¶8 (product sold exclusively at salons). Defendant concedes that the facilities or

channels of trade are similar here. The court therefore finds that this factor weighs in favor of

Plaintiff.  <u>See</u> <u>Sara Lee Corp.</u>, 81 F.3d at 465-66.

### 5. Similarity of advertising used by the markholders

The parties do not dispute that their methods of advertising are similar. Both parties

advertise their products on the internet and via social media, as well as at trade shows and in

trade magazines and literature. <u>See</u> (##33-5, 33-6); (#49) (Grayson O's products on website);

(#33-4); (#37 at 60-65); Stamey Dec., (#46-1) at ¶16. They also advertise in salons through

posters and product displays. <u>Id.</u> The court therefore finds that the parties' advertising is similar

and targets similar consumers; this factor does nothing to ameliorate confusion and therefore

weighs in Plaintiff's favor. <u>See</u> <u>Sara Lee Corp. v. Kayser-Roth Corp.</u>, 81 F.3d 455, 466 (4th Cir.

1996).

### 6. Defendant's intent

The court also assesses the intent of a defendant in adopting the mark. This factor is

generally a significant one because "[i]f there is intent to confuse the buying public, this is strong

evidence establishing likelihood of confusion, since one intending to profit from another's

reputation generally attempts to make his signs, advertisements, etc., to resemble the other's so as

deliberately to induce confusion." <u>George & Co.</u>, 575 F.3d at 397 (quoting <u>Pizzeria Uno</u>, 747

F.2d at 1535).

Plaintiff argues that Defendant acted willfully in its allegedly infringing use of Plaintiff's

mark because Defendant knew about the trademark before it began selling its products. See (#1-3) (July 2012 cease and desist letter from Plaintiff to Defendant). However, mere knowledge of a mark is insufficient to establish intent to infringe. See Swatch, S.A. v. Beehive Wholesale, L.L.C., 888 F. Supp. 2d 738, 754 (E.D. Va. 2012); Anheuser-Busch, Inc. v. L. & L. Wings, Inc., 962 F.2d 316, 321-22 (4th Cir. 1992) ("the relevant intent in trademark cases is not merely an intent to profit, which would condemn all commercial parody, but an 'intent to confuse the buying public.'") (quoting Pizzeria Uno, 747 F.2d at 1535); George & Co. LLC v. Imagination Entm't Ltd., 575 F.3d 383, 398 (4th Cir. 2009) ("knowledge of another's goods is not the same as an intent to mislead and to cause consumer confusion.") (internal citation and quotation marks omitted). As evidence that Defendant intended to confuse consumers, Plaintiff notes that after it sent Defendant a letter regarding what it considered to be Defendant's infringing use, Defendant directed its label designer to increase the font size of the words "Hair Shield 450" on its label. Defendant also changed its label from "Heat Shield" to "Hair Shield" after receiving the cease and desist letter. See Aff. of P. Bogosian (#51-4) at ¶3, n. 1. However, Defendant's Vice President stated in his sworn declaration that he did not know of Grayson O's F 450 product line at the time Grayson O chose the name for its product line or anytime thereafter until it received Grayson O's letter claiming infringement. See id. at ¶ 5.

The court finds that even though Defendant was notified of its alleged infringement in July 2012 when Plaintiff sent a cease and desist letter, there is no evidence that Defendant's continued use of the "Agadir Argan Oil Hair Shield 450° Plus" mark was in bad faith. Indeed, in its response to Grayson O's letter, Agadir explained why it believed there was no infringement. See (#1-4). The court finds that there is not sufficient evidence to establish that Defendant was

trying to capitalize on Plaintiff's mark or that Defendant otherwise had an intent to mislead or cause consumer confusion, especially given the distinction in the packaging and the common use of "450" in marketing products designed to protect hair from high temperatures. The court therefore finds that this factor weighs against a likelihood of confusion.

### 7. Actual confusion

The seventh and most important factor is actual confusion, which can be demonstrated by both anecdotal and survey evidence.[5] <u>George & Co. LLC v. Imagination Entm't Ltd.</u>, 575 F.3d 383, 398 (4th Cir. 2009). <u>See also</u> <u>Lyons P'ship, L.P. v. Morris Costumes, Inc.</u>, 243 F.3d 789, 804 (4th Cir. 2001). However, "it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." <u>Tassel Ridge Winery, LLC v. Woodmill Winery, Inc.</u>, No. 5:11-CV-00066-RLV, 2013 WL 5567505, at *8 (W.D.N.C. Oct. 9, 2013) (quoting <u>Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.</u>, 799 F.2d 867, 875 (2nd Cir.1986)). Nonetheless, "[t]he existence of some evidence of instances of actual confusion does not necessarily prevent the grant of a summary judgment of a dismissal for lack of a triable issue of a likelihood of confusion….Instead, actual confusion evidence of a very limited scope may be dismissed as <u>de minimis</u>." <u>Fuel Clothing Co. v. Nike, Inc.</u>, 7 F. Supp. 3d 594, 621 (D.S.C. 2014) (internal citations and quotation marks omitted). Similarly, "[a]lthough proof of actual confusion is not necessary to show a likelihood of confusion, the absence of any evidence of actual confusion over a substantial period of time…creates a strong inference that there is no likelihood of confusion." <u>CareFirst of Maryland, Inc. v. First Care, P.C.</u>, 434 F.3d 263, 269 (4th Cir. 2006).

---

5 As noted earlier, Plaintiff has not offered any survey evidence in this matter.

The Fourth Circuit has also noted:

> In assessing the weight of the evidence, we note that [e]vidence of the number of instances of actual confusion must be placed against the background of the number of opportunities for confusion before one can make an informed decision as to the weight to be given the evidence. If there is a very large volume of contacts or transactions which could give rise to confusion and there is only a handful of instances of actual confusion, the evidence of actual confusion may receive relatively little weight.

George & Co. LLC v. Imagination Entm't Ltd., 575 F.3d 383, 398 (4th Cir. 2009) (quoting 4 McCarthy on Trademarks and Unfair Competition § 23:14 (4th ed.)).

Here, Plaintiff argues that there have been many instances of actual confusion. Plaintiff argues that during the Deposition of Van Stamey, Corporate Representative of Grayson O, Mr. Stamey identified many instances of actual confusion, which first occurred at a trade show. See Stamey Depo., (#39) at p. 79-99. The confusion was apparently among at least 24 people, including beauty supply customers and Plaintiff's own employees, who all noticed at the July 2011 and 2012 trade shows that Defendant had a sign up that said "450." Id. Defendant points out, however, that Mr. Stamey was unable to provide the name of a single consumer —whether a distributor or a retail customer—who was actually confused about the source of the mark. Moreover, Mr. Stamey admitted that there was no documentary evidence of any actual instances of confusion. Id. at 78:19-79:4.

The court finds that what evidence has been offered in the way of actual confusion is, at best, de minimis. See George & Co., 575 F.3d at 399 (finding that evidence by way of testimony from four consumers that they were actually confused by Defendant's mark was de minimis in light of Plaintiff's annual product sales of 500,000 units) (collecting cases). The evidence that does exist essentially amounts to statements of fact that people notified one of Plaintiff's representatives at

a trade show that Defendant was using the word "450" in its product name. There is no evidence that anyone was actually confused about the source of the goods. Thus, the court finds that while Plaintiff does not need to show actual confusion, the lack of evidence of actual confusion presented to the court does not weigh in favor of finding a likelihood of confusion.

### 8. Quality of the defendant's product

"Consideration of the quality of the defendant's product is most appropriate in situations involving the production of cheap copies or knockoffs of a competitor's trademark-protected goods. If a defendant markets a product under a mark similar to that affixed by a competitor to a commodity of like nature but superior manufacture, that the defendant's product is markedly inferior is likely to be highly probative of its reliance on the similarity of the two marks to generate undeserved sales." Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 467 (4th Cir. 1996). Here, both parties concede that the quality of the parties' products is similar and that this factor is inapplicable.

### 9. Sophistication of the consuming public.

In assessing the sophistication of the consuming public, this factor is only applicable when the relevant market is not simply the general public at-large. See Fuel Clothing Co. v. Nike, Inc., 7 F. Supp. 3d 594, 623 (D.S.C. 2014); George & Co., 575 F.3d at 400 ("here, the relevant market is the public at-large, and there is no evidence that persons who buy dice games are any more sophisticated about dice games than those who comprise the market for other ordinary retail goods."). On the other hand, where "the typical consumer in the relevant market is sophisticated in the use of—or possesses an expertise regarding—a particular product, such sophistication or expertise may be pertinent in determining the likelihood of confusion." Sara Lee Corp. v.

<u>Kayser–Roth Corp.</u>, 81 F.3d 455, 467 (4th Cir.1996). <u>See also</u> <u>Perini Corp. v. Perini Const., Inc.</u>, 915 F.2d 121, 127 (4th Cir. 1990) ("the sophistication and expertise of the usual purchasers can preclude any likelihood of confusion among them stemming from the similarity of trade names.").

Here, the parties dispute whether the consuming public is particularly sophisticated. The consumer base is somewhat unique in this case in that the parties' products are both sold exclusively at salons, as opposed to generic drugstores or other mass market stores where basic hair care products are sold. Thus, both the salons and the customers who shop exclusively at salons for higher-end hair care products are the consumers of the parties' products. While the court does not find that this factor figures heavily into its likelihood of confusion determination, the fact that the consumers of the products at issue are likely somewhat more knowledgeable about hair care products than the average consumer indicates that this factor weighs slightly against a risk of confusion.

### B. Conclusion on Likelihood of Confusion

In sum, the court finds that the parties have applied their respective marks to similar goods that are sold through similar facilities via similar forms of advertising, and that these factors weigh in favor of a likelihood of confusion. However, the mark is not very strong or distinctive as actually used in the marketplace, the marks are not so similar in sight, sound, and meaning as to result in confusion, Plaintiff has offered only <u>de minimis</u> evidence of actual confusion, there is insufficient evidence of Defendant's intent to confuse, and the consuming public is slightly more sophisticated than the average hair care product purchaser. All of these factors weigh against a likelihood of confusion. Based on the above-discussed factors, the court finds that no reasonable

jury could, based on the evidence presented, find that likelihood of confusion exists between the parties' marks. See George & Co., 575 F.3d at 400 (holding that even where the third, fourth, and fifth factors weighed in favor Plaintiff, a trademark infringement claim can still fail when other factors are more compelling and noting "we are aware of no case where a court has allowed a trademark infringement action to proceed beyond summary judgment where two weak marks were dissimilar, there was no showing of a predatory intent, and the evidence of actual confusion was de minimis."). See also Swatch, S.A. v. Beehive Wholesale, L.L.C., 888 F. Supp. 2d 738, 756 (E.D. Va. 2012) aff'd sub nom. Swatch AG v. Beehive Wholesale, LLC, 739 F.3d 150 (4th Cir. 2014) ("[h]aving considered the relevant factors, it is inescapable that some favor [the plaintiff] ... [h]owever, the most significant factor, actual confusion, weighs decidedly against [the plaintiff] ... [and] [w]hen combined with the lack of similarity between the marks, lack of predatory intent, lack of similar advertising and only minimal similarity in facilities, the Court finds that there s no likelihood of confusion.") (internal quotation marks omitted); Fuel Clothing Co. v. Nike, Inc., 7 F. Supp. 3d 594, 623-24 (D.S.C. 2014). Accordingly, the court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment as to all claims (#51) is **GRANTED**; Plaintiff's Motion for Partial Summary Judgment (#45) is **DENIED**; and this action is **DISMISSED**.

Signed: November 13, 2015

Max O. Cogburn Jr.
United States District Judge